UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TRUSTEES MAIN/270 LLC, | : |
| Plaintiff, | : Case No. 2:22-cv-1938 |
| v. | : Chief Judge Algenon L. Marbley |
| APPLIANCESMART, INC., et al., | : Magistrate Judge Deavers |
| Defendants. | : |

**OPINION & ORDER**

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment (ECF No. 51). For the following reasons, Defendants' Motion is **GRANTED in part and DENIED in part**.

**I. BACKGROUND**

This case arises from a lease agreement (hereinafter the "Agreement") between Plaintiff Trustees Main/270 LLC ("Trustees Main" or "Plaintiff") and Defendants ApplianceSmart, Inc., *et al.*, ("ApplianceSmart" or "Defendant"). Plaintiff is an Ohio LLC. (ECF No. 1). Defendant is a Minnesota corporation. (*Id.*). On June 3, 2008, Trustees Main's predecessor in interest, Schottenstein Trustees, an Ohio general partnership, entered into a lease agreement with Defendant's predecessor in interest, ApplianceRecyling Centers of America, now known as co-Defendant JANONE, Inc., at a location within a commercial shopping center at 6080 East Main Street, Columbus, Ohio (the "Premises"). (*Id.*).

On April 25, 2017, the parties entered into a Lease Extension and Modification Agreement extending the term of the lease to June 30, 2025. (*Id.*). In addition to the extension, JANONE signed a guaranty of lease, in which it guaranteed that certain

obligations of Defendant ApplicanceSmart would be met in the event of a default under the lease. (*Id.*).

On September 27, 2019, Trustees Main, ApplianceSmart, and JANONE executed a Second Lease Modification Agreement and Ratification of Guaranty by Converted Corporation. (ECF No. 51 at 3). This Agreement resolved delinquent rent and tenant charges of $141,048.18, accounted for the conversion of the guarantor Appliance Recycling Centers of America, Inc. from a Minnesota Corporation to a Nevada Corporation known as JANONE, Inc., and ratified JANONE's obligation as guarantor, notwithstanding the conversion. (*Id.*). Then, on December 14, 2021, the parties entered into a Third Lease Modification Agreement and Ratification of Guaranty. (*Id.*). This third Agreement again resolved delinquent rent and tenant charges of $185,323.75 and ratified and affirmed JANONE's obligations as guarantor of the lease. (*Id.*). The First Amendment to Lease Agreement, the Lease Extension and Modification Agreement, the Second Lease Modification Agreement, and the Third Lease Modification Agreement, are referred to jointly as the "Agreement."

In the Agreement, ApplianceSmart agreed to pay Plaintiff fixed rent installments from 2017 to 2025. (*Id.*). At the beginning of February 2022, however, ApplianceSmart abandoned the Premises and ceased paying rent. (*Id.*). On February 10, 2022, Trustees Main served a Notice of Default to both ApplianceSmart and JANONE informing them of their obligations under the Agreement. (ECF No. 51). ApplianceSmart and JANONE exceeded the cure period and Trustees Main initiated this action on April 11, 2022. (*Id.*).

On July 17, 2023, Defendants filed a Motion for Partial Judgment on the Pleadings. (ECF No. 39). Defendants asserted that the contractual provision relied on by Plaintiff is inapplicable, and as a result, Plaintiff fails to state a claim. Plaintiff responded by articulating

that even if the provision is inapplicable, its Complaint meets the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. This Court found that Plaintiff sufficiently alleged the requisite elements of a breach of contract and adequately pleaded a cause of action. (ECF No. 59 at 6). Accordingly, this Court denied Defendants' Motion under Rules 8(a) and 12(c) of the Federal Rules of Civil Procedure. (*Id.*).

Plaintiff now brings the present Motion for Partial Summary Judgment. (ECF No. 51). ApplianceSmart has properly responded (ECF No. 54) and Plaintiff has replied (ECF No. 57). The matter is now ripe for review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating such a motion, the evidence must be viewed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion, as well as to identify the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the non-moving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the non-movant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position [is] insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

### III.  LAW & ANALYSIS

**A.  There is No Dispute Regarding Breach of Lease and Breach of Guaranty**

Under Ohio law, "a breach of contract claim requires a plaintiff to show: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *DN Reynoldsburg v. Shoe Show, Inc.*, No. 2:18-CV-1190, 2020 WL 5797828, at *2 (S.D. Ohio 2020). When a contract contains a provision for a

4

guarantor, the liability of a guarantor exists after default by the primary debtor. *New Mkt. Acquisitions, Ltd. v. Powerhouse Gym*, 154 F. Supp. 2d 1213, 1224 (S.D. Ohio 2001). Here, the Parties do not dispute that Defendants failed to pay rent, tenant charges, and late charges beginning from February 1, 2022 to March 26, 2023. (ECF No. 57 at 2). ApplianceSmart further admits that it owed rent and tenant charges of $155,267.15 to Plaintiff as of June 1, 2022. (*Id.*). The Third Lease Modification Agreement and Ratification of Guaranty states in part that JANONE "agrees to indemnify and hold Landlord harmless from any loss, liability, damage or expense (including reasonable attorney's fees) arising from the failure of Tenant to perform any of the Tenant Obligations and/or the enforcement of the Guaranty." (ECF No. 51 at 6). Rule 56(a) turns on whether there is a genuine issue of material fact present in a given matter. Because the facts here are undisputed, no such genuine issue exists. As a result, Defendants' Motion for Partial Summary Judgment (ECF No. 51) is **GRANTED in part** as to the unpaid rent and tenant charges of $155,267.15.

### B. Defendants Have Fulfilled the Pleading Requirements

Defendants argue that Plaintiff has not fulfilled its pleading requirement alleging breach of contract in Counts I and II of its Complaint because Plaintiff relies on § 23(a)(i) of the Agreement. (ECF No. 54 at 2). Defendants claim that § 23(a)(i) is inapplicable because it only applies in the event of termination by Plaintiff, and Plaintiff did not terminate the lease. (*Id.*). This Court previously disposed of this issue in its March 29, 2024 Opinion & Order (ECF No. 59) denying Defendants' Motion for Partial Judgment on the Pleadings. (ECF No. 39). This Court found that Plaintiff met the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure and alleged sufficient facts to plead the existence of a cause

5

of action. (ECF No. 59 at 6). Accordingly, this Court will not re-examine Defendants' argument on this point.

### C. Mitigation

The remaining dispute at this stage concerns the issue of mitigation. Under Ohio common law, when a tenant defaults, a landlord has a duty to mitigate its damages by attempting to relet the premises. *See Dennis v. Morgan*, 732 N.E. 2d 391, 394 (2000). The landlord is also generally entitled to recover reasonable expenses incurred in mitigating its damages. *See F. Enterprises, Inc. v. Kentucky Fried Chicken Corp.*, 351 N.E. 2d 121, 124-27 (1976); *Hines v. Riley*, 717 N.E. 2d 1133, 1135-36 (Ohio App. 4th Dist. 1998).

Defendants here assert a failure to mitigate as an affirmative defense to Plaintiff's Complaint. (ECF No. 8 at 3). Plaintiff responds by first arguing that the Lease Agreement defines its obligation to mitigate, and that there is no genuine issue of material fact that Plaintiff met that obligation. (ECF No. 51 at 10). The Lease Agreement states:

> Mitigation of Damages. If Landlord terminates this Lease or Tenant's right to possession, Landlord shall have the obligation to mitigate damages to the extent required by applicable law. If Landlord is required by applicable law to mitigate damages under this Lease: (1) Landlord shall be required only to use commercially reasonable efforts to mitigate, which shall not exceed such efforts as Landlord generally uses to lease other premises in the Shopping Center, (2) Landlord will not be deemed to have failed to mitigate and such mitigation shall be deemed complete if Landlord leases all portions of the Premises.

(ECF No. 1-4 at 16). Plaintiff maintains that it used commercially reasonable efforts to relet the premises and that it therefore met its obligation to mitigate its damages. (*Id.*). Defendants disagree, however, arguing that both JANONE and Live Ventures, Inc. ("Live Ventures," ApplianceSmart's parent company), made multiple attempts to find a replacement tenant, but that Defendants frustrated all of these efforts. (ECF No. 54 at 4-5). Specifically, JANONE

6

offered ARCA Recycling, Inc. as a potential tenant, while Live Ventures offered both Flooring Liquidators and Vintage Stock. (*Id.* at 5). The reasonableness of a landlord's efforts to mitigate its damages is determined by the trial court. *Frenchtown Square P'ship v. Lemstone, Inc*., 99 Ohio St. 3d 254, 255. Accordingly, this Court will examine each potential tenant in turn.

JANONE first offered to have its wholly-owned subsidiary, ARCA Recycling, Inc., occupy the Premises under the same terms and conditions as the existing Lease, either as a new tenant or as a sublessee. (ECF No. 54 at 5). Defendants aver that ARCA is an established recycling business with eighteen locations throughout the United States and that it could have operated under the ApplianceSmart brand so that none of the signage would have needed to be changed. (*Id.*). Defendants further argue that Plaintiff attempted to impose unreasonable terms on ARCA, requiring it to "make an Early Termination Deposit of six months [sic] rent, which the new tenant would forfeit if Landlord decided to terminate the lease early." (ECF No. 57 at 10). Plaintiff admits that it imposed the Early Termination Deposit and argues that the terms were the result of lessons learned from previous dealings with JANONE, who repeatedly failed to pay rent on behalf of ApplianceSmart in 2019, 2021, and 2022. (*Id.*).

> The Early Termination Deposit was designed to protect the Trustees Main in two scenarios. The first, statistically likely, scenario is that the tenant and guarantor would default in the payment of rent and charges for the fourth time. The defaults in 2019 and 2021 were not cured until the amounts owed reached $141,048.18 and $185,323.75. The requested deposit of six months' rent, would be approximately $177,455.04 based on the average monthly charges of $29,575.84 … Thus, the proposed deposit was sought to provide security roughly in the amount of the prior defaults if the tenant and guarantor again elected to stop paying rent owed under the lease.
>
> The second scenario … arises from the crucial context that the defendants' own proposed lease term for ARCA was limited to: "ARCA Recycling would stay as long as necessary to mitigate the overall claim of guaranty the landlord has against JanOne Inc. My folks would cooperate with the potential re-

7

> leasing efforts and would continue to pay at the current rent until the landlord could secure another tenant." See Hubbard Declaration at ¶3.

(ECF No. 57 at 10-11). Plaintiff alleges that in response to its proposed Early Termination Deposit, Defendants rejected the proposal and did not make any counterproposal to address their concerns. (*Id.* at 12-13). Plaintiff argues that Defendants failed to negotiate, and that this failure destroys Defendants' stance that Plaintiff failed to mitigate. Defendants, however, argue that they did indeed offer to comply with the Early Termination Deposit conditions and pay all back rent due from ApplianceSmart, and that Plaintiff instead elected to wait for a larger, more national retailer to make an offer for the Premises. (ECF No. 54 at 6).

Next, Live Ventures offered to have one of its portfolio companies, Flooring Liquidators, occupy the Premises under the same terms and conditions as the existing Lease, again either as a new tenant or as a sublessee. (ECF No. 54 at 5). Defendants claim that Flooring Liquidators is an established flooring retailer that operates in twenty-two retail locations in multiple states. (*Id.*). Plaintiff points out that Defendants fail to include the fact Live Ventures was at the time, and remains, a defendant in *Securities and Exchange Commission v. Live Ventures Incorporated et al.*, Case No. 2:21-cv-1433, United States District Court, District of Nevada (Las Vegas). (ECF No. 57 at 13). Live Ventures is charged with "multiple financial, disclosure, and reporting violations related to inflated income and earnings per share, stock promotion and secret trading, and undisclosed executive compensation," including misrepresenting the date on which it had acquired a new subsidiary from ARCA, the very tenant that JANONE first proposed. (*Id.*). Despite this, Plaintiff investigated the feasibility of Flooring Liquidators as a tenant. Plaintiff asked questions regarding the square footage of the average Flooring Liquidators location, the type of business it is, the ownership structure, projected revenue, sales records for comparable

8

locations, and other similar information. (*Id.* at 14). Yet Defendants were unable to provide the requested information, nor did they contact Plaintiff to schedule a call with relevant personnel. (*Id.* at 15). Plaintiff argues that this failure to participate again defeats any assertion that Plaintiff failed to mitigate.

Live Ventures then offered to have another one of its portfolio companies, Vintage Stock, occupy the Premises under the same terms and conditions as the existing Lease, once again either as a new tenant or as a sublessee. (ECF No. 54 at 5). Defendants claim that Vintage Stock is an established entertainment retailer with seventy locations, some of which occupy spaces in excess of 50,000 square feet, making it a particularly suitable tenant for the space at issue here. (*Id.*). Plaintiff, however, alleges that its personnel have no "recollection of such a proposal, nor is there any indication of such a proposal in any of the emails or documents associated with the defendants' breach or this litigation." (*Id.* at 16). Plaintiff further asserts that if "Vintage Stock – as a Live Ventures company and thus also subject to the SEC lawsuit – had been put forward, the very same questions presented to Flooring Liquidators that went unanswered would have been presented to Vintage Stock." (*Id.*). As a result, Plaintiff argues that it cannot be held to have failed to mitigate its damages with regard to these tenants.

Failure to mitigate is an affirmative defense. As such, the defendant typically bears the burden in proving that a landlord failed to mitigate its damages. *Shonac Corp. v. Maersk, Inc.*, 159 F. Supp. 2d 1020 (S.D. Ohio 2001). Here, however, the Lease Agreement provides that damages for breach are to be offset by sums received under a new lease (ECF No. 51 at 2). In these situations, the plaintiff may instead bear the burden in proving its mitigation efforts. *Chuang Dev. LLC v. Raina*, 2017-Ohio-3000, ¶¶ 64-67 (Ct. App.); *see also Jayashree*

*Rests., LLC v. DDR PTC Outparcel LLC*, 2016-Ohio-5498, ¶¶ 21-22 (Ct. App.) (finding that "no court can be reasonably certain what the damages are" without evidence of the plaintiff's mitigation efforts).

The duty of a landlord to mitigate its damages by attempting to relet the premises in the event of default by the tenant is well-established. *See Dennis v. Morgan*, 732 N.E. 2d 391, 394 (2000). This duty remains present even if the damages are "caused by a lessee's breach of a commercial lease if the lessee abandons the leasehold. The lessor's efforts to mitigate must be reasonable, and the reasonableness should be determined by the trial court." *Frenchtown Square P'ship v. Lemstone, Inc.*, 99 Ohio St. 3d 254, 255. Here, Plaintiff had a duty to mitigate its damages under contract law. Defendants argue that Plaintiff failed to mitigate its damages by rejecting all three of the alternative tenants and imposing "unusual and unreasonable" conditions on the replacement tenants in the form of the Early Termination Deposit. (ECF No. 54 at 6). The question of the reasonableness of Plaintiff's alleged efforts is to be determined by this Court.

Plaintiff in this case was presented with three separate opportunities to re-let the Premises. In the first, Plaintiff attempted to place an undue burden on ARCA in the form of an Early Termination Deposit for back rent. This Court finds it unreasonable to place such a condition on a new tenant, in spite of JANONE's past behavior. In *Cobblestone Square II Co. v. L&B Food Servs.*, the Ohio Court of Appeals ruled that where a commercial landlord "was unwilling to lease out the premises without being paid for the two months of outstanding rent," that landlord failed to mitigate its damages. 2011-Ohio-4817, ¶ 37 (Ct. App.). The Court went on to conclude:

> If his testimony is believed, [the landlord] improperly hindered the leasing of
> the space by requiring the other company to pay the back rent owed by [the

10

> tenant] … The nonbreaching party does not have a right to be made whole as a condition precedent to its efforts in mitigating damages. To hold otherwise would defeat the concept of mitigation altogether.

*Id.* at 141. Here, as in *Cobblestone Square II Co.*, the landlord sought to improperly hinder the leasing of the space by requiring ARCA to pay not two – but *six* – months' worth of back rent owed by ApplianceSmart *in addition to all legal fees and related charges*. (ECF No. 51-1 at 3). Further, the Early Termination Deposit stipulated that ARCA would forfeit its deposit if *Plaintiff* terminated the Lease. Put simply, the tenant could be deprived of its $177,455.04 deposit if the landlord decided for any reason to terminate the Lease. As set forth by the Ohio Court of Appeal, this Court finds that Plaintiff Trustees Main does not have a right to be made whole before it mitigates its damages.

Further still, Defendants argue that in a showing of good faith, JANONE and Live Ventures still offered to comply with the Early Termination Deposit conditions and pay all back rent due from ApplianceSmart. (ECF No. 54 at 6). Plaintiff, however, elected to wait for a larger, more national retailer to make an offer for the Premises. (*Id.*). While not authoritative in this District, the Supreme Court of Vermont in *O'Brien v. Black* ruled that waiting for a more attractive national tenant was an insufficient defense for a landlord arguing that it mitigated its damages:

> When tenant abandoned the leased premises, landlord refused to entertain an offer from a prospective tenant. Instead, landlord decided to wait for a national chain store tenant – a tenant that could pay higher rent than the breaching tenant … The issue is whether, having made the decision to refuse to entertain a prospective tenant and to pursue a national tenant, the landlord can charge the abandoning tenant with the risk and cost of its decision. We agree with the trial court's conclusion that landlord cannot impose the cost of its decision on the breaching tenant and recover rent for the waiting period from tenant.

11

162 Vt. 448, 455 (1994). This Court agrees. Viewing the evidence in the light most favorable to Defendants as this Court must at this stage, it is clear that a genuine issue of material fact is present as to Plaintiff's decision to wait for a national retailer. *Sierra Brokerage Servs., Inc.*, 712 F.3d at 327. If Plaintiff did indeed attempt to place improper conditions on the tenant it was offered and to cherry-pick its replacement tenants, it will have failed to mitigate.

Regarding Live Ventures, genuine issues of material fact exist as to Flooring Liquidators and Vintage Stock. With respect to Flooring Liquidators, Plaintiffs argue that Defendants did not provide the requested business information or contact Plaintiff to discuss the proposal for Flooring Liquidators to take over the tenancy. (ECF No. 57 at 15). Plaintiff argues that this failure to participate again defeats any assertion that Plaintiff failed to mitigate. Plaintiff, however, bears the burden of proving its mitigation efforts in this case because the Lease Agreement provides that damages for breach are to be offset by sums received under a new lease. *Raina*, 2017-Ohio-3000, ¶¶ 64-67. Plaintiff fails to meet this burden; Plaintiff presents no evidence of its efforts to contact Defendants to pursue or otherwise advance the deal. The reasonableness of Plaintiff's efforts is for this Court to determine, and there is no evidence before this Court of so much as a follow-up on Plaintiff's part. *Frenchtown Square P'ship*, 99 Ohio St. 3d at 255. The evidence also displays tension regarding negotiations that took place concerning Vintage Stock. Defendants claim to have submitted a proposal to Plaintiff for Vintage Stock to occupy the Premises, but Plaintiff alleges that its personnel have no "recollection of such a proposal, nor is there any indication of such a proposal in any of the emails or documents associated with the defendants' breach or this litigation." (ECF No. 54 at 5). To be sure, there can be no failure to mitigate if a landlord was not presented with the opportunity to mitigate in the first place. Plaintiff alleges

in essence that Live Ventures never offered Vintage Stock as a tenant. If this is true, Plaintiff did not fail to mitigate regarding Vintage Stock.

This Court need not reach the issue of Live Ventures' status as a defendant in an ongoing District of Nevada proceeding at this stage. The Parties make no argument concerning the matter. Indeed, Plaintiff firmly indicated its intention to proceed in its investigation of the feasibility of Flooring Liquidators despite this information. (ECF No. 57 at 14). Further, "summary judgment in favor of the party with the burden of persuasion is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact." *Rheinfrank v. Abbott Lab'ys, Inc.*, 119 F. Supp. 3d 749, 786 (S.D. Ohio 2015), *aff'd*, 680 F. App'x 369 (6th Cir. 2017). Here, the evidence presented is susceptible to different interpretations by a trier of fact: either Plaintiff's negotiation with Flooring Liquidators was reasonable, or it was not; either Defendants put Vintage Stock forward as a proposed tenant, or they did not. Such tension in the evidence demands that summary judgment be denied and that the factfinder must "resolve the parties' differing versions of the truth at trial." *Gibson v. Foltz*, 963 F. 2d 851, 853 (6th Cir. 1992).

Considering the evidence submitted before it, this Court finds that genuine disputes of material fact exist as to the three tenants proposed by Defendants. The issues of the Early Termination Deposit, the decision to wait for a national retailer, the negotiations concerning Flooring Liquidators, and the alleged proposal concerning Vintage Stock all contain disputed facts that would be improper to dispose of at this stage. As such, summary judgment is inappropriate.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Partial Summary Judgment is **GRANTED in part and DENIED in part**. (ECF No. 51). The Motion is **GRANTED in part** as

to the unpaid rent and tenant charges of $155,267.15 and the Motion is **DENIED in part** as to the issue of whether Plaintiff failed to mitigate.

      **IT IS SO ORDERED.**

                                             **ALGENON L. MARBLEY**
                                             **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  August 27, 2024**