IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TRUSTEES MAIN/270 LLC,** | : | |
| | : | |
| **Plaintiff,** | : | Case No. 2:22-cv-1938 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| **APPLIANCESMART, INC., et al.,** | : | Magistrate Judge Deavers |
| | : | |
| **Defendants.** | : | |
| | : | |

**OPINION & ORDER**

This matter is before this Court on Plaintiff's Motion *in limine* (ECF No. 75). This Court issued its decision on the record at the Final Pretrial Conference on Wednesday, April 30, 2025, but sets forth its reasoning more fully herein. For the following reasons, Plaintiff's Motion is **GRANTED IN PART**. (ECF No. 75).

### I. BACKGROUND

This case is a landlord/tenant dispute regarding a lease agreement between Plaintiff/landlord Trustees Main/270 and Defendants/tenants ApplianceSmart, Inc., and JANONE, Inc. The claims arise from Defendant ApplianceSmart's failure to pay pursuant to a lease agreement, and Defendant JANONE's obligations as guarantor under the lease. At the beginning of February 2022, Defendants abandoned the property and ceased paying rent. (*Id.*). On February 10, 2022, Plaintiff served a Notice of Default to both Defendants regarding their obligations under the Agreement. JANONE admits that neither ApplianceSmart nor it paid rent, tenant charges, late charges, or any other money to Plaintiff beginning in February 2022.

Plaintiff filed its Complaint on April 11, 2022, alleging claims for breach of lease and guaranty of lease. (ECF No. 1). On July 17, 2023, Defendants filed a Motion for Partial Judgment

on the Pleadings. (ECF No. 39). Defendants asserted that the contractual provision relied on by Plaintiff is inapplicable, and as a result, Plaintiff failed to state a claim. Plaintiff responded by articulating that even if the provision is inapplicable, its Complaint met the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. In an Opinion & Order dated March 29, 2024, this Court found that Plaintiff sufficiently alleged the requisite elements of a breach of contract and adequately pleaded a cause of action. (ECF No. 59).

On February 12, 2024, Plaintiff brought a motion for partial summary judgment seeking damages against Defendants jointly and severally for $768,971.84, 18% interest per annum on the amounts owed, and attorney fees incurred in recovering these amounts, to be determined upon final judgment in this matter. (ECF No. 51). The motion was granted in part. (ECF No. 60). This Court found that the parties did not dispute that Defendants failed to pay rent, tenant charges, and late charges beginning from February 1, 2022 to March 26, 2023. This Court also noted that Defendants admitted that it owed rent and tenant charges of $155,267.15 to Plaintiff as of June 1, 2022. Also, pursuant to the Third Lease Modification Agreement and Ratification of Guaranty, Defendant JANONE "agree[d] to indemnify and hold Landlord harmless from any loss, liability, damage or expense (including reasonable attorney's fees) arising from the failure of Tenant to perform any of the Tenant Obligations and/or the enforcement of the Guaranty." As such, this Court found that these facts were undisputed, thus, no genuine issue existed as to $155,267.15 owed by Defendants.

The motion for partial summary judgment was denied in part as to whether Plaintiff failed to mitigate. While Defendants used this as an affirmative defense and would typically bear the burden of proving that a landlord failed to mitigate its damages, the agreements provide that

damages for breach are to be offset by sums received under a new lease, so "plaintiff may instead bear the burden in proving mitigation efforts." (ECF No. 60 at 9). The agreement states:

> <u>Mitigation of Damages</u>. If Landlord terminates this Lease or Tenant's right to possession, Landlord shall have the obligation to mitigate damages to the extent required by applicable law. If Landlord is required by applicable law to mitigate damages under this Lease: (1) Landlord shall be required only to use commercially reasonable efforts to mitigate, which shall not exceed such efforts as Landlord generally uses to lease other premises in the Shopping Center, (2) Landlord will not be deemed to have failed to mitigate and such mitigation shall be deemed complete if Landlord leases all portions of the Premises.

(ECF No. 1-4 at 16). Plaintiff maintained that it used commercially reasonable efforts to relet the premises and that it therefore met its obligation to mitigate its damages. This Court noted that Plaintiff was presented with three separate opportunities to relet but did not and, accordingly, held there is a genuine dispute of material fact as to the mitigation efforts. This Court then scheduled this case for a bench trial.

Parties have filed exhibit lists, witness lists, and a proposed pretrial order. (ECF Nos. 78-84). In the proposed pretrial order, Plaintiff asserts Damages are as follows: $155,267.15 previously awarded by this Court in its summary judgment opinion and order; brokerage fees of $126,637.52; rent from July of 2022 through lease expiration of $1,096,634.53; attorney's fees through final judgment, which stand at $63,238.00 as of March 1, 2025; attorney expenses of $557.54; and interest on all owed amounts, including the prior award, at 8% as of the date of final judgment. (ECF No. 83). In the proposed pretrial order, the parties also confirm that the contested issue of fact is whether the Plaintiff met its obligations to mitigate the Defendants' breach of their rent and other financial obligations under the lease. Defendants argue that Plaintiff failed to meet its mitigation obligations and that Plaintiff's new lease with the replacement tenant, AutoZone, creates a windfall to Plaintiff that should offset any damages awarded to Plaintiff.

Plaintiff filed a motion in limine related to two witnesses Defendants intend to call at trial to discuss the mitigation issue: Tony Isaac and Virland Johnson. (ECF No. 75). Mr. Isaac is a director and the Chief Executive Officer of Defendant JANONE and the director of the parent company of Defendant ApplianceSmart. (ECF No. 79). He will testify to Defendants' attempts to provide a replacement tenant, show Plaintiff failed to mitigate its damages, and testify regarding the value of Plaintiffs replacement lease as an offset to any claimed damages. Mr. Johnson, the Chief financial officer of Defendant JANONE and former Chief Financial Officer of the parent company of ApplianceSmart, will offer similar testimony. (*Id.*).

## II. STANDARD OF REVIEW

The purpose of a motion *in limine* is "to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). "It is well established that '[w]hether or not to grant a motion in limine falls within the sound discretion of the trial court.'" *Delay v. Rosenthal Collins Grp., LLC*, No. 2:07-cv-568, 2012 WL 5878873, at *2 (S.D. Ohio Nov. 21, 2012) (citing *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562 (6th Cir. 2012)). The guiding principle is "to ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004).

Courts should "exclude evidence on a motion *in limine* only when that evidence is determined to be clearly inadmissible on all potential grounds." *Delay*, 2012 WL 5878873, at *2. Thus, "[w]hen a court is unable to determine whether or not certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in the proper context." *Id.* Orders *in limine* which exclude broad categories of evidence should seldom be employed. The better practice is to deal with questions of admissibility as they arise. *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975); *see also Morrison v. Stephenson*, No. 2:06-cv-283, 2008 WL 343176, at *1 (S.D. Ohio Feb. 5, 2008) ("Courts . . . are

4

generally reluctant to grant broad exclusions of evidence *in limine*, because a court is almost always better situated during the actual trial to assess the value and utility of evidence."). "Whether or not to grant a motion *in limine* falls within the sound discretion of the trial court." *Delay*, 2012 WL 5878873, at *2.

Additionally, "[a] ruling on a motion in limine is no more than a preliminary, or advisory, opinion that falls entirely within the discretion of the district court." *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983)). Thus, this Court "may change its ruling at trial for whatever reasons it deems appropriate." *Id.* Furthermore, motions in *limine* in the context of bench trials are generally of limited utility. *Ohio Willow Wood Co. v. Alps S., LLC*, No. 2:04-CV-1223, 2014 WL 3734342, at *2 (S.D. Ohio July 29, 2014) (citing *Bank One, N.A. v. Echo Acceptance Corp.*, No. 04–CV–318, 2008 WL 1766891, at *1 (S.D. Ohio Apr. 11, 2008)). "Without the fear that prejudicial or improper evidence will taint the jury, courts are even more inclined to take a wait-and-see approach." *Id*.

### III. LAW & ANALYSIS

Plaintiff argues Defendants did not disclose Mr. Isaac and Mr. Johnson as expert witnesses. (ECF No. 75). Based on this lack of expert disclosure, Plaintiff urges this Court to prohibit Mr. Isaac and Mr. Johnson from offering any opinion testimony: (1) based upon standards within the commercial leasing industry; (2) that the Plaintiff's actions in mitigation fail to comply with such standards; and (3) that the value of the replacement tenant lease (Plaintiff's lease with AutoZone) retroactively offsets the rent not paid over the three years. (*Id*. at 4). Defendants respond that the proposed testimony is not expert testimony, but permissible lay witness testimony given the witness' familiarity with lease terms as lessees of numerous properties across the country. (ECF No. 82).

5

Federal Rule of Civil Procedure 26(a)(2) concerns the pretrial disclosures of an expert witness. The rule generally requires a written report containing "a complete statement of all the opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). While expert witnesses generally can testify in the form of an opinion, lay witnesses' testimony, is restricted in offering opinions. Fed. R. Evid. 701, 702. Lay witness opinion testimony must be "rationally based on the witness's perception," "helpful to understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Lay witnesses also are required to have personal knowledge of the matter to which they testify. Fed. R. Evid. 602.

The Sixth Circuit recognizes that the distinction between lay witness and expert witness testimony "is far from clear in cases where, as here, a witness with specialized or technical knowledge was also personally involved in the factual underpinnings of the case." *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (citations omitted). When determining whether testimony is lay or expert testimony, courts find that "lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning which can be mastered only by specialists in the field." Fed. R. Evid. 701, Advisory Committee Notes to 2000 Amendments (quoting *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)) ("[A] lay witness with experience could testify that a substance appeared to be blood, but that a witness would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma."). Congress intended to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson." *Id.* "In applying Rule 701, 'the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination.'" *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) (quoting *United States v. Valdez–Reyes,* 165 Fed.Appx. 387, 392 (6th Cir.2006)).

6

Nonetheless, "the fact that [a] witness, by virtue of his or her experience in a business, has knowledge not possessed by the average person does not render the witness's opinion an expert opinion." *Yukech v. California Transp. LLC*, No. 2:20-CV-05804, 2023 WL 4370575, at *3 (S.D. Ohio July 6, 2023) (quoting *United States v. Whaley*, 860 F. Supp. 2d 584, 594 (E.D. Tenn. 2012)). For example, in *Braun Builders, Inc. v. Kancherlapalli*, No. 09-11534-BC, 2010 WL 1981008, at *3 (E.D. Mich. May 18, 2010), the court noted the proper analysis for determining whether testimony is lay testimony or expert testimony requires focus not on the witness, but on the testimony the witness intends to provide. 2010 WL 1981008, at *3 (citing *White,* 492 F.3d at 403). The *Braun Builders* court explained the following:

> Guza may testify as a lay witness concerning his personal knowledge of the facts of this case. He may testify, for example, that he inspected the house and noted it was missing shingles from the roof, that the interior framing was only partially completed, or that windows in front of the house were eighteen inches from the floor. He may not, however, apply the technical and specialized knowledge he has gained through his years of training and experience as a construction contractor to explain how much it would cost to remedy particular construction defects. Such testimony fits into Rule 702 and requires proper disclosures and an expert report before it will be admitted.

*Id.* at *3.

Also illustrative is the case relied upon by Defendants, *English Woods Civic Ass'n/Resident Cmty. Council v. Cincinnati Metro. Hous. Auth.*, No. 1:03-CV-186, 2004 WL 6043508, at *1 (S.D. Ohio Nov. 23, 2004). In *English Woods*, the defendants argued that the plaintiff's lay witness should be precluded from expressing their opinions regarding the structural condition of the housing development at issue because they are not qualified experts, and the scope of Plaintiff's testimony should be limited to the condition of their own individual apartment pursuant to Fed. R. Evic. 702. The court was "not persuaded that [the plaintiff's] witnesses should be precluded from expressing their first-hand knowledge and personal observations regarding the condition" of the housing development. *English Woods*, 2004 WL 6043508, at *1.

7

Here, the witnesses in question are the chief executive and financial officers of Defendants testifying about the leased space and Defendants' attempts to provide a replacement tenant. (ECF No. 79). Defendants also propose testimony about reasonableness of mitigation efforts and the value of the replacement tenant lease based on the witnesses' "experiences as businessmen involved on a routine basis with the leasing of properties for their companies' stores and their experience with landlords requiring or not requiring the sorts of extreme requirements that the Plaintiff demanded here." (ECF No. 79 at 1). Indeed, a lay witness is permitted to testify as to her personal knowledge and observations like the witnesses at issue in *Braun Builder* and *English Woods*. As Plaintiff stated, the "motion does not aim to prevent Mr. Isaac or Mr. Johnson from testifying as to whether either defendant had previously received terms similar to those presented by the plaintiff." (ECF No. 75 at 4).

Mr. Isaac and Mr. Johnson's testimony, however, would be improper to the extent their testimony begins to apply their years of experience and specialized knowledge of the commercial leasing industry to define industry standards, conclude on the reasonableness of the Plaintiffs' actions, or conclude a value of the replacement tenant lease. Another instructive example for this Courts analysis is *NGM Ins. Co. v. Walker Const. & Dev., LLC*, No. 1:11-CV-146, 2012 WL 6553272, at *4 (E.D. Tenn. Dec. 13, 2012), where the court referenced the *Braun Builders* analysis and distinguished a witness's lay testimony from testimony applying specialized knowledge (i.e. expert testimony). There, the witness testified to the contents of a contract at issue between the defendants and plaintiff, his expectations under the contract, minutes of a meeting he read in which concerns were expressed about Defendants' work performance, what other parties told him, and his observations. The court found the testimony was not expert testimony because the witness was not invited to apply any specialized knowledge. On the other hand, when the witness described the Department of Housing and Urban Development's grant program and how it applied to the

8

contracts at issue, the court held that the witness was asked to apply his specialized knowledge of the grant program to the facts of the case. The witness was also asked his opinion of the bond company that responded to Plaintiff's claims and responded he thought they acted "reasonably" and "in good faith." The court found that this was also an application of specialized knowledge and was thus impermissible lay witness testimony. *Id*. Like in *Walker Const.*, testimony going beyond personal knowledge of facts and observations by applying specialized knowledge would be impermissible lay witness testimony in the case *sub judice*.

Nonetheless, Defendants insist that the testimony will not be based on technical or other specialized knowledge. This trial is set for a bench trial, and "[w]ithout the fear that prejudicial or improper evidence will taint the jury" courts are usually more inclined to take a "wait-and-see approach." *Ohio Willow Wood Co*, 2014 WL 3734342, at *2. As such, the Motion is **GRANTED in part**. This Court finds Mr. Isaac and Mr. Johnson's opinion testimony would be improper *only to the extent their testimony begins to apply their years of experience and specialized knowledge of the commercial leasing industry* to define industry standards, conclude on the reasonableness of the Plaintiffs' actions to mitigate damages, or conclude the value of the replacement tenant lease as to offset Defendants' obligations. Isaac and Johnson can testify as to their personal knowledge and observations of the events in this case.

Defendants additionally argue that due to the late disclosure of the replacement lease, it should be afforded an opportunity to call non-expert witnesses to testify as to the value of the replacement lease as an offset to its lease obligations. Defendants explain that when the replacement lease was disclosed, it had no time under the case schedule extant at the time to designate an expert and prepare a report. (ECF No. 82 at 2). This Court reset the trial schedule to account for the late disclosure of the replacement lease and Defendants did not raise this issue of

9

needing additional time with the Court. (ECF Nos. 76, 77). Provided Defendants needed additional time to prepare for an expert witness to argue the value of the replacement lease, Defendants' remedy would have been a motion for continuance.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **GRANTED IN PART**. (ECF No. 75).

**IT IS SO ORDERED**.

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  May 4, 2025**